UNITED STATES, Appellee

v.

Michael L. KNAPP II, Airman First Class
U.S. Air Force, Appellant

No. 13-0512

Crim. App. No. 37718

United States Court of Appeals for the Armed Forces

Argued November 18, 2013

Decided January 15, 2014

STUCKY, J., delivered the opinion of the Court, in which ERDMANN
and OHLSON, JJ., joined.  BAKER, C.J., filed a separate
dissenting opinion, in which RYAN, J., joined.


Counsel


For Appellant:  Captain Isaac C. Kennan (argued); Captain
Nicholas D. Carter (on brief).


For Appellee:  Captain Thomas J. Alford (argued); Colonel Don M.
Christensen and Gerald R. Bruce, Esq. (on brief).


Military Judge:  Michael E. Savage

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

It is the "exclusive province of the court members to determine the credibility of witnesses." United States v. Brooks, 64 M.J. 325, 328 n.3 (C.A.A.F. 2007). Here, an agent from the Air Force Office of Special Investigations (AFOSI) testified that, using his specialized training, he was able to determine that Appellant was being deceptive when he provided an innocent account of the events in question. We granted review to decide whether this testimony improperly usurped the members' role in determining witness credibility and, if so, whether it prejudiced Appellant. We hold that the agent's testimony was impermissible "human lie detector" testimony and, that under the circumstances of this case, it materially prejudiced Appellant's defense.

## I. Posture of the Case

Contrary to his pleas, a panel of members sitting as a general court-martial convicted Appellant of aggravated sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). He was sentenced to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved, and the United States Air Force Court of Criminal Appeals affirmed the conviction and sentence, finding that, while admission of the

testimony was error, no material prejudice to Appellant resulted from the testimony. United States v. Knapp, No. ACM 37718, 2013 CCA LEXIS 243, 2013 WL 1319505 (A.F. Ct. Crim. App. Mar. 20, 2013) (unpublished).

## II. Background

Appellant was convicted of having sexual intercourse with Airman First Class (A1C) ES early on the morning of December 17, 2009, when she was too drunk to be conscious or to consent. On the afternoon of December 17, Special Agent (SA) Peachey and another AFOSI agent questioned Appellant for several hours about the incident. Appellant repeatedly told the AFOSI agents that A1C ES had at first consented to a sexual encounter, but partway through, she lost consciousness, so he immediately stopped contact with her. By the end of the multi-hour interview, though, Appellant admitted that A1C ES had been unconscious and unable to consent from the start of the encounter. Appellant signed and swore to a statement to this effect.

In his opening statement, the defense counsel conceded that Appellant had sex with A1C ES and argued that the only issue was her consent. He asserted that a witness would "corroborate" that A1C ES was awake and consented to the sex. He argued that Appellant confessed to the AFOSI only after he had denied any wrongdoing more than seventeen times but eventually broke due to the prolonged interrogation.

3

SA Peachey testified at trial on direct, cross-examination, and redirect that Appellant gave specific nonverbal cues indicating deception during the part of questioning when he maintained A1C ES consented to sexual activity. First, trial counsel asked about Appellant's "nonverbal clues" on direct. SA Peachey replied that agents are "trained to pick up on nonverbal discrepancies . . . . Early on in the interview the accused would not make eye contact with me when we were talking about the sexual intercourse portion." SA Peachey then explained:

> That is indicating to me that there is some form of deception going on. Prior to the intercourse, the accused was very detailed, very detail oriented, would look me in the eye, talk to me, and as soon as we got to the intercourse he would look away, look at the wall, look at the floor, not look at [the agents], and then immediately after the sexual intercourse timeframe he would kind of come back to us and be, once again, extremely detailed . . . [l]ater on we had to ask him open-ended questions to try to get the truth out from him.

The defense did not object to this testimony.

During cross-examination, defense counsel asked why the interview did not end when Appellant repeatedly said A1C ES was awake and willing when they began to have sexual intercourse. SA Peachey replied, "Like I had stated earlier, sir, I'm trained on picking up nonverbal cues during interviews . . . and the accused was giving off several nonverbal cues which made us believe that we needed to dig a little deeper." Defense counsel then asked, "And one of the nonverbal cues is he would not look

4

at you when it came to him talking about the sex, correct?" SA Peachey answered, "Correct." Again, defense counsel did not object.

On redirect, trial counsel asked about nonverbal cues SA Peachey saw on Appellant's face. In response, SA Peachey testified that "large red sun blotches" would appear on Appellant's face when he spoke about the "actual incident." At this point, defense counsel objected on human lie detector grounds. After getting the trial counsel to agree not to "draw an inference from those responses," the military judge overruled the objection.

During the Government's case-in-chief, trial counsel played a ten-minute clip of Appellant's questioning and confession from the night of December 17, 2009. During the defense case, defense counsel played a one-hundred-minute recording of the interrogation, including this clip.

Trial counsel did not mention the nonverbal cues during closing argument. Before deliberations, the military judge gave general instructions on the members' duty to determine witness credibility, false exculpatory statements, and coerced confessions. The general credibility instruction given was:

> The credibility of witnesses. You have the duty to
> determine the believability of the witnesses. In
> performing this duty you must consider each witness'
> intelligence, ability to observe and accurately
> remember, sincerity and conduct in court, friendships

and prejudices.  Consider also the extent to which each witness is either supported or contradicted by other evidence; the relationship each witness may have with either side; and how each witness might be affected by the verdict.  In weighing discrepancies between witnesses, you should consider whether they resulted from an innocent mistake or a deliberate lie.  Taking all these matters into account, you should then consider the probability of each witness' testimony and the inclination of the witness to tell the truth.  The believability of each witness' testimony should be your guide in evaluating the testimony, not the number of witnesses called.  These rules apply equally to the testimony given by the accused.

The military judge did not give a "human lie detector" instruction or otherwise specifically address SA Peachey's testimony.

### III.  Discussion

"[T]his [C]ourt has been resolute in rejecting the admissibility of so-called human lie detector testimony, which we have described as:  'an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case.'"  Brooks, 64 M.J. at 328 (quoting United States v. Kasper, 58 M.J. 314, 315 (C.A.A.F. 2003)).  "If a witness offers human lie detector testimony, the military judge must issue prompt cautionary instructions to ensure that the members do not make improper use of such testimony."  Kasper, 58 M.J. at 315.

"Where an appellant has not preserved an objection to evidence by making a timely objection, that error will be

6

forfeited in the absence of plain error." Brooks, 64 M.J. at 328 (citing Military Rule of Evidence 103(d)); accord United States v. Mullins, 69 M.J. 113, 116 (C.A.A.F. 2010). "A timely and specific objection is required so that the court is notified of a possible error, and so has an opportunity to correct the error and obviate the need for appeal." 1 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 103.02[1] (10th ed. 2011). To be timely, an objection must normally be made before the answer is given, although some federal courts have permitted objections or motions to strike immediately after the answer. Id. at § 103.02[8] n.41 (citing, as an example, United States v. Spriggs, 102 F.3d 1245 (D.C. Cir. 1996)).

Appellant failed to timely object to SA Peachey's human lie detector testimony on either direct or cross-examination. Therefore, we review for plain error. Under this Court's plain error jurisprudence, Appellant has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights. Brooks, 64 M.J. at 328.

## A. There is error

The authority to introduce character evidence under Military Rule of Evidence 608(a) does not extend to human lie detector testimony. Kasper, 58 M.J. at 315. SA Peachy testified that he had been specifically trained to detect

7

nonverbal clues that a suspect was being deceptive and that, using this training, he determined that Appellant's claims that the sexual intercourse with A1C ES was consensual were deceptive. These facts echo those of Kasper, in which another AFOSI agent testified that, "'we assess through body language and other things if the individual is being truthful or not.'" Id. at 316. There we appropriately concluded:

> The picture painted by the trial counsel at the outset of the prosecution's case through SA Lozania's testimony was clear: a trained investigator, who had interrogated many suspects, applied her expertise in concluding that this suspect was lying when she denied drug use and was telling the truth when she admitted to one-time use. Such "human lie detector" testimony is inadmissible.

Id. at 319.

The Government argues that SA Peachey had a lawful reason to testify; specifically, to rebut Appellant's opening statement that the confession was the result of a prolonged interrogation that had broken Appellant's will to resist by explaining why he continued the interview despite Appellant's initial exculpatory statements. The Government can certainly rebut a defense counsel's argument, but it cannot do so by usurping the role of the jury in determining witness credibility. See id. at 315.

Under these circumstances, it would have been permissible for SA Peachey to describe Appellant's physical reaction to the interrogation questions. See Salinas v. Texas, 133 S. Ct. 2174,

2178 (2013) (plurality opinion) (permitting prosecutor to use an accused's physical reaction to questioning as evidence of guilt when the accused failed to invoke his right to remain silent). It also would have been permissible for SA Peachey to explain that this reaction caused him to continue questioning Appellant. But SA Peachey went too far by declaring that he had been trained to divine a suspect's credibility from his physical reactions to the questioning.  This testimony, suggesting that SA Peachey's evaluation of Appellant's denial of wrongdoing was based on his expertise in determining credibility, impermissibly "'usurp[ed] the [members'] exclusive function to weigh evidence and determine credibility.'"  Kasper, 58 M.J. at 315 (quoting United States v. Birdsall, 47 M.J. 404, 410 (C.A.A.F. 1998)).

## B.  The error was clear or obvious

In determining whether the error was clear or obvious, we look to law at the time of the appeal.  Mullins, 69 M.J. at 116; see also Henderson v. United States, 133 S. Ct. 1121, 1127 (2013).  Our condemnation of human lie detector testimony easily predates Appellant's trial.  See, e.g., United States v. Petersen, 24 M.J. 283, 284–85 (C.M.A. 1987).  This error was clear or obvious.  See id.

## C.  The error is prejudicial

An obvious error materially prejudices the substantial rights of the accused when it has "an unfair prejudicial impact

9

on the [court members'] deliberations." United States v.
Powell, 49 M.J. 460, 463 (C.A.A.F. 1998) (quoting United States
v. Fisher, 21 M.J. 327, 328 (1986)) (internal quotation marks
omitted).

At trial, Appellant testified, consistent with his original
statements to the AFOSI, that, although A1C ES was intoxicated,
she initiated the sexual contact and engaged in consensual
sexual intercourse. He explained that he stopped as soon as he
realized she was unconscious. Having conceded that he had
engaged in sexual intercourse with A1C ES, the sole question
before the members was whether he was truthful when he said that
she initiated the sex and consented to the sexual intercourse.
But that testimony had already been discredited by an AFOSI
agent who professed to have expertise in divining the truth from
the demeanor of the suspect. The only evidence contradicting
Appellant's testimony was A1C ES's testimony, that she had been
too inebriated to remember the night or to have consented to
sexual contact, and Appellant's confession, which he maintains
he made only when he broke down after eight or nine hours of
interrogation.

The Government's argument that Appellant was not prejudiced
because defense counsel played at trial a one-hundred-minute
tape of the questioning of Appellant is unavailing. Playing the
tape certainly allowed members to see the nonverbal behaviors to

which SA Peachey testified. But rather than draw their own conclusions in assessing Appellant's statements to the AFOSI, the court members were left with the purported expertise of SA Peachey, describing Appellant's physical reactions as evidence of deception. Cf. Brooks, 64 M.J. at 330 (holding that, because of the limited corroborating evidence and a lack of a specific instruction by the military judge, "[a]ny impermissible evidence reflecting that the victim was truthful may have had particular impact upon the pivotal credibility issue and ultimately the question of guilt").

Before permitting counsel to argue on findings, the military judge instructed the members on the substantive issues they had to decide. The military judge did provide the general credibility instruction, but he never instructed the members that they could not consider SA Peachey's human lie detector testimony in determining Appellant's credibility or in determining his guilt. "[T]he military judge was responsible for making sure such testimony was not admitted, and that the members were provided with appropriate cautionary instructions." Kasper, 58 M.J. at 319; cf. Mullins, 69 M.J. at 115, 118 (holding the appellant failed to demonstrate prejudice when military judge gave a specific instruction advising the members that "no witness is a human lie detector"). The military judge failed to do so in this case.

11

Here, as in Kasper, the human lie detector "testimony was not offered on a peripheral matter or even as a building block of circumstantial evidence," but "on the ultimate issue in the case -- whether Appellant was truthful as to the charge."  58 M.J. at 319.  Under these circumstances, we conclude that the military judge's failure to appropriately instruct the members to disregard this testimony was prejudicial error.

## V.  Judgment

The judgment of the United States Air Force Court of Criminal Appeals is reversed.  The findings of guilty and the sentence are set aside.  A rehearing is authorized.

United States v. Knapp, No. 13-0512/AF

    BAKER, Chief Judge, with whom RYAN, Judge, joins
(dissenting):

    I concur with the majority's judgment that the testimony of
Special Agent (SA) Peachey regarding nonverbal cues and
deception constituted "human lie detector" evidence.  I also
agree that the admission of this evidence was obvious error,
although certainly it is more obvious when spliced together on
appeal than in the context of an ongoing trial.  Civilian
defense counsel expressly referred to the redirect examination
testimony as "human lie detector" evidence.  Moreover, SA
Peachey's statement that he could discern deception by observing
a person's physiological and behavioral reaction to questions is
the very essence of what it would mean to serve as a human
polygraph.

    Nonetheless, I disagree with the majority on prejudice.
For sure, a curative instruction addressed specifically to human
lie detector evidence would have resolved this matter.  However,
unless we are going to treat the introduction of any human lie
detector evidence as per se prejudicial or structural in nature,
which we have not before done, I do not see how the introduction
of this evidence in this case materially prejudiced a
substantial right of the accused.  Indeed, the argument that
Appellant was not prejudiced is overwhelming.  The

undermentioned facts distinguish this case from Kasper. United States v. Kasper, 58 M.J. 314 (C.A.A.F. 2003).

First, Appellant confessed.

Second, the evidence corroborating Appellant's confession was overwhelming and it was generated before SA Peachey entered the picture. Specifically, physical evidence in the form of Appellant's DNA confirmed sexual intercourse between the Appellant and the victim. Appellant testified that he had removed the condom from the garbage can in the victim's room, thereby removing physical evidence of the encounter. MS, who went drinking with the victim and Appellant, testified that the victim was "pretty drunk," "really drunk," and even "could [not] walk on her own." The victim could not recall what occurred, and Appellant chose not to refresh her recollection. Indeed, he made no reference to the events of the night before when driving with the victim after leaving her room the next day. The nurse who performed the sexual assault examination testified that Appellant denied having sex with the victim at all, demonstrating to the members that Appellant from the very outset was less than consistent in his explanation of the events.

Third, defense counsel introduced to the members the entirety of the interrogation video to which SA Peachey's testimony was addressed. The video included multiple occasions where SA Peachey and his partner suggested they did not believe

2

Appellant was truthful: "You know how I know that's not true?";
"You're dancing on the line of me saying that you were a
complete jerk and you ran me around the table for hours"; "Why
would you want to try and destroy the evidence? . . . Because
she didn't know the whole time, did she?"; "[W]e can get the
whole entire story and all the details when we come back"; and
"So, no more playing these little games, dancing around the
flagpole trying to pull one over on the OSI agents.  Okay?  When
we come back in here one hundred percent truth --."  The members
could judge Appellant's credibility and reaction to the
interrogation for themselves.

Fourth, Appellant testified.  The members could judge
Appellant's demeanor and credibility for themselves.

Fifth, trial counsel did not rely on SA Peachey's testimony
in closing argument.

Appellant's rebuttal to all this is that the members were
already tainted in their perception of Appellant's credibility
by SA Peachey's testimony.  As such, they would not have heeded
the military judge's admonition to judge credibility for
themselves even when given the opportunity to do so by listening
to Appellant's testimony and viewing the video the defense
introduced documenting the testimonial events in question.

This argument and the majority opinion give SA Peachey's
words a Solomonic status they do not deserve.  SA Peachey's

3

testimony was not presented with numerical certainty removing any doubt including reasonable doubt, as was the case in Brooks, where we found the expert witness's remarks "suggested . . . there was better than a ninety-eight percent probability that the victim was telling the truth." United States v. Brooks, 64 M.J. 325, 329 (C.A.A.F. 2007). Or in Mullins, where the expert testimony "involve[d] a statistical statement" that there was "a 1 in 200 chance the victim [was] lying." United States v. Mullins, 69 M.J. 113, 116 (C.A.A.F. 2010). Rather, SA Peachey offered evidence that would have been intuitive to any member of a military panel. Peachey was a special agent with interrogation training who thought Appellant was deceptive when questioned; presumably the Government would not have charged Appellant with the offense in question otherwise.

For these reasons, I respectfully dissent on the question of prejudice and would affirm the Court of Criminal Appeals and this case.