# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class TYLER W. WARD
## United States Air Force

## ACM 38412

## 11 February 2015

Sentence adjudged 7 May 2013 by GCM convened at Travis Air Force Base, California. Military Judge: W. Shane Cohen (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 3 years, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Major Nicholas D. Carter.

Appellate Counsel for the United States: Major Roberto Ramírez; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

CONTOVEROS, Judge:

At a general court-martial composed of a military judge sitting alone, the appellant was convicted, contrary to his pleas, of one specification of forcible sodomy, in violation of Article 125, UCMJ, 10 U.S.C. § 925. He was sentenced to a bad-conduct discharge, confinement for 3 years, reduction to E-1, and a reprimand. The convening authority approved the sentence as adjudged.

Before us the appellant raises two assignments of error[1]: (1) his conviction is legally and factually insufficient and (2) the military judge committed plain error by allowing improper bolstering of the victim's testimony. The appellant alternatively casts his second assignment of error as an ineffective assistance of counsel claim. Finding no error materially prejudicial to the appellant, we affirm.

*Background*

Airman First Class (A1C) PW met the appellant on her first day of technical training at Fort Sam Houston, Texas. About a month later, the appellant asked A1C PW to be his girlfriend, to which she happily agreed. The two began a dating relationship which regularly involved sexual intercourse. The appellant departed for his duty station, Travis Air Force Base (AFB), California, a few weeks later. The two continued their dating relationship long distance, communicating by text message and telephone. According to A1C PW, these conversations were sometimes "really pleasant," but at other times the appellant accused her of cheating on him and made "demands for [her] to do certain things." When she and the appellant engaged in "phone sex," A1C PW said she was both disgusted and fearful when the appellant began expressing sadistic sexual fantasies.

A1C PW later visited the appellant at Travis AFB because she attributed his demands and sexual behavior to his being under stress, and she thought she could "fix him." When she flew into San Francisco, the appellant met her at the airport's baggage claim and proposed to her. As she had recently discovered she was pregnant with his child, she was happy with the proposal and thought they would be a family.

The next day, however, the appellant became violent. When A1C PW would not do what he wanted during sex, she testified the appellant grabbed her by the hair and slammed her face into the bed. She testified that the more she refused to do certain acts, the more he would continue slamming her face into the bed and then he would punch the mattress or the wall next to her head. Another night, while having sex, the appellant began talking about anal sex and how much he wanted to try it with A1C PW. She expressed her misgivings, having heard it could hurt or even result in a trip to the emergency room if not done correctly. She stated she ultimately complied with the appellant's request because he was getting angry.

---

[1] In his original assignments of error, the appellant also alleged that the record of trial was incomplete because Defense Exhibits A and B were missing. The Government has since provided these two exhibits, and they have been added to the record of trial. Accordingly, this assignment of error has been rendered moot. *See United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982) (stating that the presumption of prejudice from substantial omissions may be overcome by the retrieval of the missing material). However, we take this opportunity to remind trial counsel of their responsibility to ensure a complete record of trial, to include the presence and proper functioning of any applicable electronic media. *See* Rule for Courts-Martial 1103.

The following day, the appellant repeatedly texted A1C PW, telling her how much he enjoyed the anal sex and wanted to do it again. A1C PW told him she was in pain[2] and did not want to do it again. When the appellant continued to talk about anal sex, A1C PW repeatedly told him no. That night, while the two were engaged in sexual intercourse, the appellant began talking about anal sex again. A1C PW continued to say no. The appellant then said, "What if I just take it?" and penetrated A1C PW's anus with his penis.

*Legal and Factual Sufficiency*

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we ourselves are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate review, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F. 2000)).

The appellant argues his conviction is legally and factually insufficient as he and A1C PW regularly engaged in "non-traditional sexual behavior," to include a "rape fantasy" in which A1C PW would protest despite being a willing participant. During the sodomy at issue, he argues, A1C PW originally protested "much like she did at other times during their 'rape fantasy' sessions," and when A1C PW continued to protest he did, in fact, stop. The appellant points to the fact that they were married two days after the sodomy at issue and also questions the timing of A1C PW's allegation because it arose after the appellant threatened to take custody of their child.

---

[2] Airman First Class (A1C) PW testified that during the anal sex, she felt pain that she rated it a "9" on a 1 to 10 scale (10 being the worst).

The elements of forcible sodomy under Article 125, UCMJ, applicable to the charged time frame[3] are: (1) that the accused engaged in unnatural carnal copulation with a certain other person and (2) that the act was done by force and without the consent of the other person. *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 51.b. (2012 ed.). "Unnatural copulation" includes one "plac[ing] that person's sexual organ in the mouth or anus of another person." *MCM*, Part IV, ¶ 51.c.

Independently reviewing the evidence of record and making allowances for not having personally observed the testimony of the witnesses, we are personally convinced of the appellant's guilt beyond a reasonable doubt. Although one of the couple's previous sexual interactions had involved a "rape fantasy" of the appellant, that instance did not involve anal sex. A1C PW never agreed to participate in an anal rape fantasy, but rather, expressed her misgivings the first time the appellant began asking to engage in anal sex. Although she agreed to it once, A1C PW experienced significant pain and discomfort, and the following day she could not have been clearer in expressing to the appellant her unwillingness to try it again. The manner in which the appellant said that he would "just take it" before pinning A1C PW to the bed to commit the offense, and his later admission that he remembered her saying "no" and telling him to stop,[4] leaves us with no reasonable doubt as to the appellant's guilt. Moreover, drawing every reasonable inference in the light most favorable to the prosecution, a reasonable factfinder could clearly find both elements of the offense beyond a reasonable doubt.

*Government Expert Testimony*

At trial, the Government called an expert in clinical and forensic psychology. The appellant contends the expert's testimony regarding the victim's "learned helplessness" to explain the victim's behavior improperly bolstered her testimony when she had not been "adequate[ly] impeach[ed]." Trial defense counsel did not object to this testimony,[5] and

---

[3] Article 125, UCMJ, 10 U.S.C. § 925, was subsequently amended by the National Defense Authorization Act for Fiscal Year 2014, Pub. L. 113-66, § 1707 (2013).

[4] As part of the investigation into the initial allegation, the Air Force Office of Special Investigations asked A1C PW to participate in a pretext phone call to the appellant. During that phone call, A1C PW asked the appellant if he remembered "the night he wanted anal and [she] didn't." When he said he did, she asked him: "Do you remember how I kept saying 'No' and telling you to stop?" When the appellant said he remembered, she asked him why he did that. The appellant replied, "Because I'm an idiot, but it's not going to happen again."

[5] The appellant does not raise as error the expert witness's testimony regarding "perpetrator behavior in a relationship" and "the pattern of behavior [of] a perpetrator." However, we are confident the military judge properly disregarded this evidence. *See* Mil. R. Evid. 404(a); *United v. Dimberio*, 52 M.J. 550, 558 (A.F. Ct. Crim. App. 1999) ("Evidence which tends to show that the typical perpetrator of a crime possesses certain traits or characteristics and that an accused possesses the same traits or characteristics is generally not admissible . . . ."). The military judge identified the issue sua sponte and told trial counsel:

> [A]t certain times, as Judge, I've got to step in myself and say, "Hey, hold on a second." The rules are there for a reason; we've got to play by the rules. . . .
> [C]reating a picture of the accused, without him opening the door to a character

the appellant argues that the military judge's admission of this evidence constitutes plain error. The appellant also alleges, without argument, that trial defense counsel were ineffective.

Where an appellant has not preserved an objection to evidence by making a timely objection, we review for plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). Under plain error jurisprudence, the appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id.*

The appellant argues that a "right to bolster" does not arise merely by a witness testifying but requires at least "an extensive, slashing cross-examination," citing *United States v. Everage*, 19 M.J. 189, 192 (C.M.A. 1985), and *United States v. Halsing*, 11 M.J. 920 (A.F.C.M.R. 1981). The cases cited by the appellant, however, refer to the admissibility of evidence of truthful character under Mil. R. Evid. 608(a), which provides that such evidence can be admitted only after the witness's character for truthfulness has been attacked. In *Everage*, for example, the court observed that not every cross-examination opens the door to bolstering with such an attack; sometimes the cross-examiner seeks instead to establish that a witness's observation is flawed, her memory is poor, or her testimony is ambiguous—despite the witness being well-intentioned. 19 M.J. at 193. Only when "the tenor of the cross-examination can be characterized as an attack on the witness' veracity" can evidence of truthful character be offered to rehabilitate the witness under Mil. R. Evid. 608(a)(2). *Id.*

This Rule, however, is not implicated by the expert's testimony in this case. While the appellant characterizes the expert's testimony as having "improperly bolstered the complaining witness's testimony," the expert did not comment on A1C PW's character for truthfulness. Rather, the expert testified that victims of domestic violence frequently remain in abusive situations, why they remain in such situations, the concept of "intermittent re-enforcement," the concept of "learned helplessness," and finally his opinion that "it wouldn't surprise [him] if the idea of learned helplessness might have explained [A1C PW's] behavior." This testimony provided an opinion regarding a psychological explanation for A1C PW's behavior. It did not involve commentary on her character for truthfulness either in the form of the expert's belief she was a truthful person or that he was familiar in any way with her reputation for such. The only manner in which the expert's testimony could be said to "bolster" the victim's testimony is in a colloquial sense, but such an equivocation of the term "bolster" is inapposite to Mil. R. Evid. 608(a)(2).

---

trait, which is really what this is, this is character testimony of the accused, you can't do it until they open the door.

The appellant urges us to draw a parallel to *United States v. Dollente*, 45 M.J. 234 (C.A.A.F. 1996), arguing that, as in *Dollente*, this case involves a "piling on" of impermissible expert testimony to bolster an alleged victim's credibility. We disagree with the comparison. In *Dollente*, our superior court reversed a conviction under the cumulative error doctrine where an expert witness testified, among other things, about the victim's credibility. 45 M.J. at 243. The expert in that case stated, for example, that he administered tests that indicate whether the witness was "the type of person who would deliberately misconstrue or deliberately exaggerate things" and "the testing or the interview showed no signs of that." *Id.* at 239. Such testimony, the court observed, was error because it "effectively placed the expert's favorable opinion of the victim's credibility before the members and provided support to the prosecution's case." *Id.* at 239–40 (citing *United States v. Suarez*, 35 M.J. 374, 376 (C.M.A. 1992)). An expert cannot testify about his or her belief that a witness is telling the truth and thereby "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Harrison*, 31 M.J. 330, 332 (C.M.A. 1990) (quoting *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981)) (internal quotation marks omitted).

In this case, the expert witness did not comment on A1C PW's credibility, nor did he state that he found her credible. Rather, his testimony involved specialized knowledge that could "assist the trier of fact to understand the evidence," *see* Mil. R. Evid. 702, providing an explanation for A1C PW's seemingly contradictory behavior—e.g., marrying the perpetrator. Our superior court has made it clear that in sexual assault cases, expert testimony about what might be considered counterintuitive behavior of the victim is permitted because it assists the finder of fact in "disabusing themselves of widely held misconceptions." *United States v. Flesher*, 73 M.J. 303, 313 (C.A.A.F. 2014) (quoting *United States v. Houser*, 36 M.J. 392, 398–99 (C.M.A. 1993)) (internal quotation marks omitted). We find no error in the military judge admitting this evidence, plain or otherwise. Had trial defense counsel objected to the expert testimony at trial, it almost certainly would have been overruled. Additionally, where trial defense counsel challenged on cross-examination the basis for the expert witness's opinion and highlighted differences between cases of "learned helplessness" cited by the expert and the circumstances present in this case, we find an allegation of ineffective assistance of counsel to be entirely without merit.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[6] Articles 59(a)

---

[6] Apart from the assigned issues, we specifically considered the appropriateness of the appellant's sentence. In addition, we considered our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to disapprove a legally and

and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

factually sufficient conviction that we find should nonetheless not be approved.  *See United States v. Nerad*, 69 M.J. 138, 147 (C.A.A.F. 2010).  We decline to grant relief on either basis.