# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, A.C. RUGH**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**DANIEL J. ZAMBRANO**
**PRIVATE FIRST CLASS (E-2), U.S. MARINE CORPS**

**NMCCA 201500002**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 18 September 2014.
**Military Judge:** Col D.J. Daughtery, USMC.
**Convening Authority:** Commanding Officer, Combat Logistis Regiment 35, 3d Marine Logistics Group, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** Maj M.C. Evans, USMC.
**For Appellant:** Eric S. Montalvo, Esq.; LT David Warning, JAGC, USN.
**For Appellee:** LT Jetti Gibson, JAGC, USN; Capt Cory Carver, USMC.

**19 January 2016**

---

## OPINION OF THE COURT

---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

RUGH, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, contrary to his pleas, of one specification of assault consummated by battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928.

The military judge sentenced the appellant to confinement for a period of 125 days, reduction to pay grade E-1, and a bad conduct discharge. The convening authority (CA) approved the adjudged sentence.

The appellant alleges two assignments of error (AOE): (1) legal and factual insufficiency; and (2) ineffective assistance of counsel. Although not raised by the appellant, we also review whether it was plain error for the military judge to use improper opinion evidence in his special findings.

While the findings and sentence are otherwise factually and legally sufficient, we find the admission of improper opinion evidence to be plain error, materially prejudicing a substantial right of the appellant, and we grant relief in our decretal paragraph. As a result, AOE (2) is moot. We resolve the additional issue below.

### Background

It was the night before Christmas 2013, and Lance Corporal (LCpl) ALW was lying on her friend's bed in the barracks on board Camp Kinser, Okinawa, Japan. Earlier, she dined with a small group including her friend, LCpl YA. Returning tipsy and tired, LCpl ALW changed into sleeping clothes and lay down. She then briefly played with her phone before drifting to sleep.

LCpl ALW awoke momentarily when LCpl YA sat down at the head of the bed and began playing with her smartphone. The room was dark and the curtains were drawn, but some light entered the room from the bathroom and under the hallway door.

LCpl ALW woke again when the appellant entered the room and sat at the foot of the bed. There, the appellant tried to convince LCpl YA to join him in celebrating the holiday with other barracks' residents. The appellant had no prior discussions or interactions with LCpl ALW, whom LCpl YA assumed was asleep. From her vantage at the top of the bed and with her smartphone in front of her, LCpl YA could only make out the appellant's features. She could not see his hands, and she was not otherwise focused on his behavior.

LCpl ALW drifted back to sleep. She was awakened when the appellant reached under the blanket and placed his hand on her knee. He slid his hand up her thigh towards her crotch, causing LCpl ALW to pull her knees closer to her body assuming a fetal position. The appellant grabbed her calf under the covers and pulled her down as he moved closer to her on the bed. This time

2

he reached between LCpl ALW's legs and rubbed the lower part of her buttocks.

Although she kept her eyes shut, she "knew he was right below my feet.  And I would – when I'd try to squirm away, I would slightly, you know, hit his thigh while I was trying to squirm away because – it's like, when I'd try to move, I'm trying to kick so hard to where I'd kind of touch him."[1]  Still, LCpl ALW did not cry out.  Instead, she whined in hopes of alerting LCpl YA to what was happening.

Believing that LCpl ALW was sick or having a bad dream, LCpl YA asked the appellant to leave.  She then sent text messages to friends, including LCpl SC, who arrived to escort the appellant from the room.  Shortly after the appellant left, it was "like somebody took the tape off [LCpl ALW's] mouth,"[2] and LCpl ALW reported what happened to others.

### Improper Opinion Evidence

At trial LCpl SC testified that he returned to the barracks room about a half-hour after escorting the appellant away, at which time he saw LCpl ALW crying heavily.  LCpl ALW then told him, "I tried to move and tell him to stop but he didn't," or words to that effect.[3]  LCpl ALW testified that when LCpl SC asked her where she was touched, "I [LCpl ALW] patted my legs, my thigh area, and I put my hand like right over my vagina.  And he [LCpl SC] was just like, 'F[**]k.'  And then just put—he just laid me back down, put the covers over me, and he went back out."[4]

Corporal (Cpl) JD testified he saw LCpl SC shortly after this conversation, and LCpl SC told him, "I just want to punch someone in the face."[5]  The defense did not object to the relevance of Cpl JD's testimony or LCpl SC's reaction to the victim's communications.

The military judge found the appellant guilty of assault consummated by battery for "touching [LCpl ALW's] knee, touching

---

[1] Record at 309.

[2] *Id*. at 317.

[3] *Id*. at 185.

[4] *Id*. at 318.

[5] *Id*. at 164.

her thigh, and by rubbing the lower part of her buttocks."[6]  The military judge, *sua sponte*, made special findings pursuant to RULE FOR COURT-MARTIAL 918(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  His special findings, first read on the record and then attached as Appellate Exhibit XIX, comprised four pages. Among his findings the military judge stated, "the court found the testimony of [LCpl ALW] to be credible,"[7] and he resolved several, minor inconsistencies in the evidence in her favor.

The military judge used three paragraphs of his special findings to support his credibility determination of LCpl ALW, concluding with:

> The testimony of [LCpl SC] shows that he talked directly to [LCpl ALW] after the initial report and questioned her as to what happened.  The testimony of [Cpl JD] shows that he encountered [LCpl SC] shortly after [LCpl SC] talked to [LCpl ALW] and at that time, [LCpl SC] wanted to punch someone in the face. This testimony shows that [LCpl SC] *appeared to believe* what he heard directly from [LCpl ALW].  The testimony of [LCpl ALW] was that when she told [LCpl SC] what happened, "he was like FUC@."[8]

The defense never objected to the military judge's special findings either at the time they were read on the record or subsequent to the adjournment of trial.

### Discussion

Where an appellant did not preserve an issue by making a timely objection, that error will be forfeited in the absence of plain error.  *United States v. Knapp,* 73 M. J. 33, 36 (C.A.A.F. 2014) (citing *United States v. Brooks,* 64 M.J. 325, 328 (C.A.A.F. 2007)); MILITARY RULE OF EVIDENCE 103(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  Plain error is established if: (1) there was error; (2) the error was clear or obvious; and (3) the error was materially prejudicial to the appellant's substantial rights.  *Knapp,* 73 M.J. at 36.

---

[6] Appellate Exhibit XIX at 1.

[7] *Id.* at 3.

[8] *Id.* at 4 (emphasis added).

A.  There was error

Admission of "human lie detector" testimony is error, *United States v. Whitney,* 55 M.J. 413, 415 (C.A.A.F. 2001), a holding underscored by subsequent cases, including *United States v. Kasper,* 58 M.J. 314, 315 (C.A.A.F. 2013) (defining "human lie detector testimony" as "an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case") and *Knapp,* 73 M.J. at 36–37.  Such testimony from a lay witness exceeds the limits of permissible character evidence governed by MIL. R. EVID. 608 (evidence of character, conduct, and bias of witness), and exceeds the scope of the witness's knowledge, in violation of MIL. R. EVID. 701 (opinion testimony by lay witnesses).  *See Kasper,* 58 M.J. at 315.

In this case, the original purpose for testimony about LCpl SC's reactions to the victim's allegations is ambiguous. However, the military judge's rationale for inclusion of that same testimony in his special findings is clear: "[T]his testimony shows that [LCpl SC] appeared to believe what he heard directly from [LCpl ALW]."[9]  The only interpretation of this special finding is that the military judge used this testimony to show that LCpl SC believed the victim's allegations and that she was therefore a more credible witness.

As we have previously articulated, "[s]pecial findings are to a bench trial as instructions are to a trial before members." *United States v. Postle*, 20 M.J. 632, 638 (N.M.C.M.R. 1985).  It is a purpose of special findings to provide a record from which the court can rectify judicial misconceptions regarding the significance of a particular fact.

Applying this analogy, we resolve that it would have been error to instruct a panel of members to use LCpl SC's or Cpl JD's testimony as a substitute for their own assessment of the victim's credibility.  The instruction would improperly permit the members to use the testimony as "an opinion as to whether [the victim] was truthful in making a specific statement regarding a fact at issue in the case." *Kasper,* 58 M.J. at 315. Therefore, just as it would be error to instruct a panel in this way, it is also error for the military judge to use the evidence in the same fashion.

Additionally, while military judges are "presumed to know the law and apply it correctly," that presumption can only apply in the absence of contrary evidence. *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000).  Our reliance on the

---

[9] *Id.*

presumption is significantly diminished when the legal and factual assertions at issue are contained within the military judge's own special findings.

Here, the military judge used LCpl SC's and Cpl JD's testimony as "human lie detector" evidence, and to do so was error.

B.   The error was clear and obvious

The law regarding improper opinion testimony, including the use of witnesses as "human lie detectors" is well-settled. *Knapp,* 73 M.J. at 37.  As a result, this error was clear or obvious.

C.   The error was materially prejudicial to the appellant's substantial rights

An error materially prejudices the substantial rights of the accused when it has an unfair prejudicial impact on the deliberations.  *Id*.  To determine unfair prejudice, the court must be persuaded that the error had a substantial influence on the findings.[10]  *Kotteakos v. United States*, 328 U.S. 750, 765, (1946).  "If so, or if one is left in grave doubt, the conviction cannot stand." *Id*.  The question is not merely whether, without the error, there remains sufficient evidence to support the verdict.  Instead, the court must determine whether the military judge's verdict was "substantially swayed by the error." *United States v. Rhodes*, 61 M.J. 445, 453 (C.A.A.F. 2005).  In this case, we are persuaded that the testimony had a substantial influence on the findings.

First, the victim's credibility was not a "peripheral matter" but of central importance to the Government's case. *Knapp,* 73 M.J. at 37.  While other witnesses corroborated the victim's testimony, no other person directly witnessed the assault.  It was on the victim's testimony alone that the military judge could determine that the bodily harm occurred.

Second, the military judge recognized the importance of the victim's credibility to the verdict.  The military judge

---

[10] We find the military judge's error involved inadmissible evidence that did not implicate a constitutional right of the accused.  Therefore, the error was nonconstitutional. *See United States v. Armstrong*, 53 M.J. 76, 81 (C.A.A.F. 2000) (treating human lie detector testimony as nonconstitutional error)*; see also United States v. Pablo*, 53 M.J. 356, (C.A.A.F. 2000) (applying the *Kotteakos* "substantial influence" test after observing the "case involve[d] inadmissible evidence rather than a denial of confrontation.").

6

concisely stated, "[t]he court found the testimony of [LCpl ALW] to be credible." The military judge's placement of this sentence at the beginning of a lengthy paragraph highlighted its significance to his verdict. The military judge used the next three paragraphs to support this statement, resolving inconsistencies in the victim's favor as a result of her deemed credibility.

Finally, within the corners of the record, LCpl SC's reaction to the victim appeared to have meaningful impact on the military judge's determination as to the victim's credibility. At liberty to include any evidence at his discretion, the military judge chose to specifically include the testimony of LCpl SC and Cpl JD in his special findings. Indeed, of the three paragraphs devoted to the victim's credibility, the evidence regarding LCpl SC's reaction takes up nearly an entire paragraph. Furthermore, there is nothing in the record that would otherwise provide us "with fair assurance," that the military judge's error did not substantially influence his decision to convict the appellant. *Kotteakos*, 328 U.S. at 765.

For these reasons, we find the improper opinion testimony substantially influenced the military judge's decision to convict the appellant and was, therefore, materially prejudicial to a substantial right of the appellant.

## Conclusion

The findings of guilty and the sentence are set aside. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate CA with a rehearing on findings and sentence authorized. Art. 66(d), UCMJ.

Senior Judge FISCHER and Senior Judge KING concur.

For the Court

R.H. TROIDL
Clerk of Court

7