*328 Judge STUCKY,
with whom Chief Judge ERDMANN joins, dissenting.
At Sergeant (Sgt) Martin’s trial, the scales of justice were tipped by grossly improper testimony from the victim’s husband explaining why he believed that his wife was “telling the truth.” Despite the fact that this impermissible evidence was first introduced by the Government on direct examination, the majority concludes that the defense invited the error on cross-examination. United States v. Martin, 75 M.J. 321, 324-25 (C.A.A.F. 2016). This conclusion fails to realistically assess the relevant testimony, and I therefore respectfully dissent.
I. Invited Error
It is “the jury’s exclusive function to weigh evidence and determine credibility.” United States v. Kasper, 58 M.J. 314, 315 (C.A.A.F. 2003) (citation omitted) (internal quotation marks omitted). Thus “an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case,” also known as human lie detector testimony, is always inadmissible. United States v. Knapp, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted) (internal quotation marks omitted). In direct contravention of this well-established rule, the Government introduced testimony from Corporal (Cpl) AI, the alleged victim’s husband, explaining that he believed his wife’s story.
The majority concludes that during cross-examination, the defense invited this obvious human lie detector testimony by prompting Cpl AI to discuss how his wife’s account originally “didn’t make too much sense.” However, Cpl ATs cross-examination testimony merely emphasized and repeated the doubts about his wife’s account that he originally expressed during the Government’s direct examination. Before the defense ever broached the subject, the Government asked Cpl AI:
Q. When you originally talked to NCIS you told NCIS that you thought it possibly . could have been you who had touched your wife?
A. Yes, sir.
Q. Why did you say that?
A. I’m the kind of person that if it’s even remotely an option I think about it like that. I guess I’m, like, a by-the-numbers-type of person. So, I mean, my wife could have thought about, you know, maybe it could have been another night. But just the way she has been since then, then I know it wasn’t me. She wouldn’t be acting the way she does nowadays, like, if it would have been me. Even if it was something that she wasn’t expecting from me she wouldn’t be acting that way.
In this exchange, the Government intentionally brought up Cpl’s ATs doubt regarding his wife’s story.[1] The majority emphasizes that the main thrust of Cpl ATs testimony—about his “own [potential] conduct” and “how his wife’s behavior had changed”—was admissible evidence which “did not provide a sufficient inference that he believed Cl was being truthful.” Martin, 75 M.J. at 326. This conclusion fails to recognize that all of this testimony went to explain why Cpl AI believed his wife’s story. The majority does not acknowledge that the introduction to this testimony was Cpl AI explaining his original doubts, followed by an extensive explanation for why he now concurred in his wife’s aecoúnt.
According to the majority:
Testimony is the functional equivalent of human lie detector testimony when it invades the unique province of the court members to determine the credibility of witnesses, and the substance of the testimony leads the members to infer that the witness believes [another witness] is truthful or deceitful with respect to an issue at trial.
Id. at 324 (citing United States v. Mullins, 69 M.J. 113, 116 (C.A.A.F. 2010); United States v. Brooks, 64 M.J. 325, 329 (C.A.A.F. 2007)). *329 By that very test, Cpl AI’s direct examination testimony was inadmissible. Although Cpl AI did not make an explicit statement concerning his wife’s credibility during direct examination, by explaining that his initial concerns with the truthfulness of his wife’s account had been alleviated, Cpl AI implied that his wife was, in fact, “truthful in maldng a specific statement regarding a fact at issue in the case.” Knapp, 73 M.J. at 36 (citation omitted) (internal quotation marks omitted).
While trial counsel may have hoped that Cpl AI would limit himself to explaining his own views, Cpl AI contrasted his own initial understanding of events with his wife’s: “So, I mean, my wife could have thought about, you know, maybe it could have been another night.” By going on to explain in detail why he could not have been the one “who had touched [his] wife,” Cpl AI was offering an implicit opinion that his wife’s story was credible. The substance of this testimony invaded the court members’ exclusive role in determining witness credibility, and effectively presented Cpl AI to the panel as a human lie detector on direct examination.
The majority attempts to dispense with this analysis by concluding that even if the members inferred from Cpl AI’s direct testimony that he believed his wife, it is not dispositive of the invited error analysis. Martin, 75 M.J. at 326 n. 4. In reaching this conclusion, the majority explains, without support, “In any court-martial members might understandably assume that a husband who is testifying at trial on behalf of the prosecution believes his wife is telling the truth about an alleged sexual assault.” Id. Such an assertion overstates the natural assumptions, if any, that accompany a husband’s agreement to testify on behalf of the government, and fails to acknowledge that any “assumptions” a panel might make based on a husband’s mere decision to testify for the prosecution should not alter the legal analysis. Regardless of the panel’s preconceptions, when a witness mentions another person’s statement regarding a fact at issue in the case, and implicitly opines upon the truthfulness of that statement, that testimony “invade[s] the province of the court members to determine the credibility of witnesses.” Mullins, 69 M.J. at 116.
On cross-examination, the defense merely emphasized Cpl AI’s previously expressed doubt over and over, asking Cpl AI, “you initially thought that maybe she imagined it?” and “|y]ou thought maybe she dreamed it?,” etc. In forcing Cpl AI to repeat and discuss his doubts, the defense simply followed where the Government had led.
The doctrine of invited error is intended to hold parties responsible for their own actions, United States v. Raya, 45 M.J. 251, 254 (C.A.A.F. 1996). If anything, it was the Government that first invited error in Sgt Martin’s case, and then completed it with blatant human lie detector testimony on redirect.
II. Prejudice
Once the question of invited error is resolved, the prejudicial impact of the ultimate error is obvious.[2] To show prejudice, Appellant must demonstrate that there is “a reasonable probability that the error affected the outcome of the trial.” United States v. Marcus, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010). By every measure, and on every factor, the impact of this error was significant.
It is helpful to begin by quoting the offending portion of the record—a direct, detailed endorsement of the victim’s testimony on redirect, by her husband of three years:
Q. Now, you just told the defense counsel that you had your doubts?
A. Yes, sir.
Q. You do believe your wife though, correct?
A, I do, sir.
Q. And she’s telling the truth?
A. She is, sir.
Q, And why do you think that?
*330 A. The way—the way that it’s affected her, the way that she’s changed, the way that it’s affected our marriage—the way that it’s negatively impacted us just as a family—we have two kids, we have three dogs, and she’s just depressed. And I understand that a mother is, obviously, is stressed out from all that, especially with me deploying again. But even on good days, she’ll just snap sometimes. And just the way that it’s affected her, something as big as it had on her wouldn’t just have happened over a small situation, sir.
This is important testimony—erroneously admitted—on a central issue in the case.
In eases where the Government relies heavily upon the credibility of the victim, we have consistently found that opinion testimony validating that victim’s testimony was prejudicial. United States v. Birdsall, 47 M.J. 404, 410 (C.A.A.F. 1998) (“testimony was focused directly on the key issue in this trial, i.e., the [victims’] credibility”); United States v. Petersen, 24 M.J. 283, 284 (C.M.A. 1987) (in a case with inconclusive physical evidence of sexual abuse, witness testified that she found the victim’s version of events “[g]reatly” believable).
Just as in Birdsall and Petersen, CRI’s account was the foundation of the Government’s case, which was anything but strong. The only other eyewitness, Mr. West, provided a markedly different description than the one conveyed by CRI, claiming that Sgt Martin climbed into the bed and removed his shirt, while CRI said that he knelt beside the bed and remained fully clothed. Several of Mr. West’s co-workers testified that he was not a truthful person. The defense also challenged CRI’s credibility on multiple grounds: her account conflicted with Mr. West’s, a eoworker testified that she was not trustworthy, and she was attempting to relate- an event that allegedly occurred as she awoke from an intoxicated sleep.
Moreover, the military judge sat passively while all of this transpired. She did nothing to inform the panel that they were not allowed to consider Cpl AI’s opinion when deciding whether to believe his wife. Without such an instruction, the members would almost have to be superhuman to disregard such obviously relevant testimony, especially since the defense argued during closing argument that “her own husband is' not convinced,” and the Government responded by hammering'home that “he came back and he told you, verbatim, that he believed his wife.”
As Sgt Martin’s fate hung on the testimony of an intoxicated victim and a witness with a track record of untruthfulness, Cpl AI’s stamp of approval became, of necessity, a cornerstone of the Government’s case. His detailed, emotional testimony explained how his home life convinced him that CRI was telling the truth. This testimony could not but affect the panel’s evaluation of CRI’s credibility, and thus the Government’s case. Appellant has demonstrated “a reasonable probability that the error affected the outcome of the trial.” Marcus, 560 U.S. at 262, 130 S.Ct. 2159.
The majority allows Sgt Martin’s conviction to stand, despite this obvious and prejudicial error. I respectfully dissent.

. Being aware that Cpl AI had expressed these doubts to NCIS, the Government seemingly wanted to “pull the sting” by addressing and explaining away the issue before the defense could exploit it. The Government was then able to bolster CRTs assault narrative by asking Cpl AI to explain why his own original musings—that he himself had groped his wife—could not be true.

. Because the defense never objected, we review for plain error. Knapp, 73 M.J. at 36 ("Appellant has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights.”). As Cpl AI’s human lie detector testimony was obvious error, we proceed directly to analyzing whether the error was harmless.