# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39918**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Javon C. RICHARD**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 November 2021

————————————

*Military Judge:* Christopher M. Schumann.

*Sentence:* Sentence adjudged on 10 January 2020 by GCM convened at Davis-Monthan Air Force Base, Arizona. Sentence entered by military judge on 14 February 2020: Bad-conduct discharge and confinement for 30 days.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and CADOTTE, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge KEY and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 928; and one specification of knowingly and wrongfully possessing child pornography on divers occasions, one specification of knowingly and wrongfully distributing child pornography on divers occasions, and one specification of knowingly and wrongfully producing child pornography on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] The court-martial sentenced Appellant to a bad-conduct discharge and confinement for 30 days. The convening authority took no action on the findings or the adjudged sentence, and the military judge entered the judgment of the court-martial.

Appellant raises six issues for our review on appeal:[3] (1) whether the evidence was legally and factually sufficient to support his conviction for production, possession, and distribution of child pornography; (2) whether the evidence was factually sufficient to support his conviction for assault consummated by a battery; (3) whether trial defense counsel were ineffective for failing to raise a motion to suppress the contents of Appellant's cell phone; (4) whether the military judge erroneously allowed improper expert testimony and, alternatively, whether trial defense counsel were ineffective for failing to object; (5) whether trial counsel's argument was improper; and (6) whether the convening authority erred by failing to take action on the sentence.[4] We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise indicated, all other references to the UCMJ, Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts*-Martial, United States (2019 ed.).

[2] Appellant was found not guilty of one specification of wrongful destruction of non-military property, four specifications of wrongful use of controlled substances, three specifications of assault consummated by battery, one specification of wrongfully communicating a threat, and one specification of wrongfully attempting to impede an investigation, in violation of Articles 109, 112a, 128, and 134, UCMJ, 10 U.S.C. §§ 909, 912a, 928, 934.

[3] Portions of the trial transcript, exhibits, and filings were sealed pursuant to R.C.M. 1113. These portions of the record and briefs remain sealed, and any discussion of sealed material in this opinion is limited to that which is necessary for our analysis. *See* R.C.M. 1113(b)(4).

[4] We have slightly rearranged the order in which Appellant presented the issues in his Assignments of Error.

## I. BACKGROUND

In October 2016, Appellant was stationed at Ramstein Air Base (AB), Germany, and was 20 years old when he met IB through the online dating application Tinder. IB was a female German citizen and 16 years old at the time. Appellant and IB quickly developed a sexual relationship. IB informed Appellant of her age early in their relationship in the fall of 2016, but according to IB, Appellant told her he "really don't [sic] care about" her age. Beginning in late 2016, Appellant requested IB send him nude pictures of herself, which she did, including images of her genitalia.

Appellant was deployed between January 2017 and July 2017. Once he returned to Germany, Appellant and IB resumed their sexual relationship. Soon thereafter, Appellant told IB that he had made a videorecording of Appellant and IB "having sex" without her knowledge. IB was shocked and asked Appellant to delete the video, to which Appellant did not verbally respond. On 20 August 2017, Appellant recorded another video of himself and IB engaged in sexual acts, this time overtly and with IB's knowledge. IB was still 16 years old when Appellant created these videos.

At several points in time, IB suspected Appellant was engaging in sexual relationships with other individuals, which caused discord between her and Appellant. After one such argument in early December 2017, IB went out for an evening in Kaiserslautern, Germany, near Ramstein AB, with her friends and without Appellant. Appellant called IB and told her to go home, but she refused and turned off her phone. Appellant then sent IB messages and a photo pretending that he had been in a car accident in a successful attempt to manipulate IB into meeting him. When IB eventually received the messages after she returned to her home, she took a train back to Kaiserslautern, where Appellant met her in his undamaged car at the train station. Appellant and IB then had a conversation in Appellant's car that turned into an argument. After IB told Appellant she had kissed someone else the preceding night, Appellant became angry and began striking the dashboard in front of IB with his hand "really hard." When IB tried to push Appellant's hands away from the dashboard, Appellant hit IB on the shoulder with his fist. IB began crying and tried to leave the car, but Appellant wanted to talk more, and he drove to a different location. Appellant and IB continued to argue, and when IB again tried to leave the vehicle Appellant held onto her to prevent her from exiting. IB struggled against him, including biting him on the arm, and was able to get out of the car, although they continued to argue. IB testified that at a later point during this incident she threw her phone at Appellant's face.

In spite of this incident, Appellant and IB resumed their relationship until Appellant was transferred to Davis-Monthan Air Force Base (AFB), Arizona,

around the beginning of January 2018. IB remained in contact with Appellant and attempted to continue a relationship with him despite his departure.

At some point during Appellant's relationship with IB, he logged into her Snapchat account[5] and posted naked images of IB, specifically explicit images of IB's genitalia, in a section of that account where other Snapchat users could see them. Appellant then changed the password on the account so that IB could not remove the images without obtaining the password from him. IB learned of the images when other people began sending her messages about them. IB was able to obtain the password from Appellant and remove the images.

At some point, Appellant also created a video of himself reviewing IB's Snapchat account, including viewing and sending himself sexually explicit images of IB that he believed IB had sent to another individual. At another point in time, Appellant sent IB's mother images of IB's genitals because he was angry at IB. In addition, on multiple occasions, without IB's knowledge, Appellant took screenshots during video calls with IB that depicted her genitals.

IB eventually learned that Appellant had begun sexual relationships with other women in Arizona. She began communicating with one of those women, KL. KL alleged Appellant committed several offenses against her in late January 2018. In addition, KL was aware Appellant possessed sexually explicit images of an underage girl (IB) on his phone. On 1 February 2018, agents of the Air Force Office of Special Investigations (AFOSI) interviewed KL regarding the offenses Appellant allegedly committed against her as well as suspected possession of child pornography on Appellant's phone.[6] This information led the AFOSI to seize Appellant's phone pursuant to a search authorization. Subsequent forensic analysis of the contents of Appellant's phone disclosed the presence of sexually explicit videos and images of IB, who was under the age of 18 years at the time, as described above,[7] including the images Appellant placed on IB's Snapchat account.

---

[5] IB had previously voluntarily provided Appellant her log-in information.

[6] The court-martial found Appellant not guilty of three specifications of assault consummated by a battery against KL in violation of Article 128, UCMJ, and one specification of wrongful communication of a threat against KL in violation of Article 134, UCMJ.

[7] Specifically, the AFOSI discovered the video of Appellant engaging in sexual acts with IB that Appellant created with IB's knowledge, and the video Appellant made of himself viewing explicit images of IB's genitals on IB's Snapchat account. The AFOSI did not find the first video that Appellant told IB he made, without her knowledge, of Appellant and IB "having sex."

AFOSI agents contacted IB regarding the possible offenses involving her. IB initially declined to participate, but eventually changed her mind in approximately June 2018. At trial, IB testified Appellant had contacted her regarding the investigation against him and asked her if she had told AFOSI that Appellant had hit her. When IB told Appellant that she told AFOSI "the truth" and that he had hit her, Appellant told IB to call AFOSI and tell them he had not hit her. According to IB, Appellant also told her to delete all of her messages with him. IB stopped communicating with Appellant after that point.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of the Child Pornography Offenses

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

Appellant's convictions for wrongfully possessing and distributing child pornography in violation of Article 134, UCMJ, required the Government to

prove: (1) between on or about 1 October 2016 and on or about 1 May 2018, in Europe and at or near Davis-Monthan AFB, on divers occasions, Appellant knowingly and wrongfully possessed and distributed to another child pornography, to wit: digital images of a minor or what appears to be a minor engaged in sexually explicit conduct; and (2) Appellant's conduct was to the prejudice of good order and discipline in the armed forces. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶¶ 68b.b.(1), (3). Appellant's conviction for wrongful production of child pornography required the Government to prove: (1) between on or about 1 October 2016 and on or about 1 January 2018, at or near Ramstein AB, Appellant knowingly and wrongfully produced child pornography, on divers occasions, to wit: a digital video of a minor, or what appears to be a minor, engaging in sexually explicit conduct; and (2) Appellant's conduct was to the prejudice of good order and discipline in the armed forces. *MCM*, pt. IV, ¶ 68b.b.(4). "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1). "Sexually explicit conduct" includes, *inter alia*, "actual or simulated: [ ] sexual intercourse . . . masturbation . . . [and] lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c.(7). A "minor" is anyone under the age of 18 years. *MCM*, pt. IV, ¶ 68b.c.(4). "Distributing" means "delivering to the actual or constructive possession of another." *MCM*, pt. IV, ¶ 68b.c.(3). "Producing" means "creating or manufacturing . . . child pornography that did not previously exist." *MCM*, pt. IV, ¶ 68b.c.(6).

### 2. Analysis

Appellant raises multiple challenges to the legal and factual sufficiency of his child pornography convictions, not all of which warrant discussion. First we consider the legal and factual sufficiency of the evidence of these offenses generally; then we consider the most significant arguments Appellant makes with respect to the sufficiency of the evidence.

### a. Legal and Factual Sufficiency Generally

The Government introduced convincing proof, through IB's testimony and digital evidence, that Appellant possessed sexually explicit digital images of IB, specifically images lasciviously displaying IB's genitals. The Government further proved through the testimony of IB and through introducing IB's German passport that IB was under the age of 18 years when these images were created. In addition, the Government proved through the testimony of IB, Appellant's friend Staff Sergeant (SSgt) NA, and KL (who Appellant told about IB), that Appellant knew IB's age at the time he possessed the images.

With regard to distributing child pornography, the Government proved through the testimony of IB and digital evidence that Appellant had shared sexually explicit images of IB's genitals with others via her Snapchat account, and had sent such images to IB's mother.

With regard to producing child pornography, specifically video of a minor engaging in sexually explicit conduct, investigators recovered video from Appellant's phone that explicitly depicted IB engaged in sexual acts with Appellant, and that included lascivious displays of IB's genitals, again created when IB was under the age of 18 years. In addition, IB credibly testified Appellant told her of the existence of another video he had created of the two of them engaging in sexual activity.

We further conclude a reasonable factfinder could determine Appellant's possession, distribution, and production of child pornography was, under the circumstances, to the prejudice of good order and discipline in the armed forces. Appellant specifically takes issue with the sufficiency of the evidence in this regard, and we consider his argument in greater detail below.

### b. Prejudicial to Good Order and Discipline

Appellant contends the Government failed to prove that the charged possession, distribution, and production of child pornography were prejudicial to good order and discipline in the armed forces. He notes that conduct punishable as prejudicial to good order and discipline under Article 134, UCMJ, "is confined to cases in which the prejudice is reasonably direct and palpable." *MCM*, pt. IV, ¶ 60.c.(2)(a); *see also United States v. Cendejas*, 62 M.J. 334, 340 (C.A.A.F. 2006). Appellant suggests his conduct had little or no "nexus with the military . . . at all" because those involved, other than him, were civilians.

In response, the Government cites *United States v. Davis*, 26 M.J. 445, 448 (C.M.A. 1988), where the United States Court of Military Appeals (CMA) explained:

> Article 134[, UCMJ,] would appear to encompass two general classes of conduct: First, that which is or generally has been recognized as illegal under the common law or under most statutory criminal codes; and, second, that which -- however eccentric or unusual -- would not be viewed as criminal outside the military context. *The former category is prejudicial to good order and discipline or is service-discrediting for the very reason that it is (or has been) generally recognized as illegal; such activity, by its unlawful nature, tends to prejudice good order or to discredit the service.*

(Emphasis added). Relying on *Davis*, the Government contends that the possession, distribution, and production of child pornography is generally recognized as illegal under statutory criminal codes. *See*, *e.g.*, 18 U.S.C. §§ 2252, 2252A. Accordingly, the Government reasons, the commonly recognized unlawful nature of Appellant's conduct "sufficiently established prejudice to good order and discipline."

Our superior court has not overruled *Davis*. However, Appellant argues the quoted language in *Davis* was dicta unnecessary to the CMA's decision. Yet in 2009, the United States Court of Appeals for the Armed Forces (CAAF) quoted the above language from *Davis* in *United States v. Conliffe* to hold that "entering without authority and possessing the intent to commit an offense punishable under the UCMJ" was "service discrediting or prejudicial conduct," due to "'its unlawful nature.'" 67 M.J. 127, 133–34 (C.A.A.F. 2009) (quoting *Davis*, 26 M.J. at 448); *cf. United States v. Vandenhecke*, No. ACM 35850, 2006 CCA LEXIS 81, at *7 (A.F. Ct. Crim. App. 27 Mar. 2006) (unpub. op.) (quoting *Davis*, 26 M.J. at 448) (holding the appellant's possession of child pornography was "prejudicial to good order and discipline . . . 'for the very reason that it *is* (or has been) generally recognized as illegal'"). Thus both the CAAF and this court have subsequently relied on the quoted language from *Davis*.

Appellant's second argument in response to *Davis* gives us greater pause. We agree with Appellant that the opinions in *Davis* and *Conliffe* appear to be in some tension with the CAAF's subsequent opinion in *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011). In *Phillips*, the CAAF noted the lower appellate court had suggested that the possession of child pornography is "per se service discrediting;" the CAAF explained:

> The terminal element must be proved beyond a reasonable doubt like any other element. Whether any given conduct violates clause 1 or 2 [of Article 134, UCMJ, prohibiting conduct prejudicial to good order and discipline and service-discrediting conduct respectively,] is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any particular course of action.

*Id.* at 165. The CAAF held that if the lower court's "per se" statement was intended to indicate a conclusive presumption that such conduct was service discrediting, the lower court erred. *Id.* at 164 (quoting *United States v. Phillips*, 69 M.J. 642, 645 (N.M. Ct. Crim. App. 2010)). Thus *Phillips* suggests the fact that an accused's conduct charged under clause 1 of Article 134, UCMJ, might be widely proscribed by criminal statutes does not entitle the Government to the conclusive presumption that such conduct is prejudicial to good order and discipline. Interestingly, although *Phillips* cites the CMA's decision in *Davis*

on a different point of law,[8] the CAAF neither criticized the language from *Davis* the Government now relies on, nor reconciled the CMA's assertion that unlawful conduct by its nature is prejudicial to good order and discipline with the prohibition on conclusive presumptions of such prejudice. *See Phillips*, 70 M.J. at 165.

In any event, we need not determine the precise relationship between *Davis* and *Phillips* because, irrespective of any presumption suggested by *Davis*, the Government introduced sufficient evidence for a rational factfinder to determine beyond a reasonable doubt that Appellant's conduct was prejudicial to good order and discipline. Appellant possessed, distributed, and produced child pornography while stationed and living on Ramstein AB, Germany, an installation on foreign soil regulated by international agreements; moreover, Appellant's status as a member of the United States forces stationed in Germany was also regulated by such agreements. His possession, distribution, and production of child pornography specifically involved a minor who was a citizen of the host nation. Appellant not only retained sexually explicit images of this minor, but he sent sexually explicit images of the minor to her mother, who was also a German resident. In addition, Appellant manipulated the minor's Snapchat account to display sexually explicit images of her genitals such that they were viewable by other Snapchat users in Germany and beyond. Considering the totality of the evidence in light of the "low evidentiary threshold" the CAAF has applied to the Article 134, UCMJ, terminal elements, *United States v. Goings*, 72 M.J. 202, 206 n.5 (C.A.A.F. 2013) (citations omitted), as well as the "very low threshold" required for legal sufficiency, *King*, 78 M.J. at 221 (citation omitted), a rational factfinder could be convinced beyond a reasonable doubt that Appellant's possession, distribution, and production of child pornography was prejudicial to good order and discipline in the armed forces. *Cf. United States v. Suwinski*, No. ACM 38424, 2014 CCA LEXIS 867, at *12–13 (A.F. Ct. Crim. App. 20 Nov. 2014) (unpub. op.) (finding the appellant's importation, possession, and viewing of child pornography in government-owned housing on Kadena AB, Japan, prejudicial to good order and discipline).

### c. Sufficiency of Evidence of Distribution

Appellant argues the evidence was insufficient to support his conviction for distribution of child pornography with respect to both the allegation that he sent IB's mother explicit images of IB, and the allegation that he made images of IB's genitalia viewable on Snapchat. We consider each argument in turn.

### i. Distribution to IB's Mother

---

[8] "Conduct need not be violative of any other criminal statute to violate clause 1 or 2 [of Article 134, UCMJ]." *Phillips*, 70 M.J. at 165 (citing *Davis*, 26 M.J. at 448).

Appellant acknowledges IB testified that Appellant sent her mother images of IB's genitalia, but argues there was insufficient proof he distributed child pornography because IB's mother did not testify, IB did not testify she actually saw the images, and the images themselves were not introduced. Therefore, he contends, there is insufficient proof such images were in fact child pornography. We disagree.

IB affirmed as fact that Appellant had sent her mother "close up" images of her "genitalia" created when she was 16 and 17 years of age. It is abundantly clear from the evidence that Appellant had access to a number of such images. Trial defense counsel did not materially challenge this testimony during the cross-examination of IB.

Moreover, another witness, Appellant's ex-girlfriend AL, testified that Appellant told her that Appellant had sent pictures to IB's mother "of what her daughter was doing." Although AL could not remember "100 percent" if Appellant used the word "nudes," Appellant said they were pictures IB had sent to Appellant. In the context of all the evidence, this assertion tended to corroborate IB's testimony.

IB's testimony was also significantly corroborated by Prosecution Exhibit 13, an exchange of text messages between Appellant and IB. During that exchange, Appellant asked IB why she did not want to send him "pics," and IB responded it was because he sent the "last one" to her "mom." In response, Appellant did not deny doing so but complained IB was going to see another man. IB responded, "When [I] send you this stuff [I] espect [sic] you to keep it to yourself to your eyes only." In response, Appellant again did not deny sending images of IB but instead responded, "When I date you I expect you [I] kept you [sic] to not f[**]k anyone . . . ." Appellant's responses tend to corroborate that he sent IB's mother explicit images of her, and indicate consciousness of guilt on his part in that he attempts to justify his behavior rather than deny the allegation.

Based on the totality of the evidence, a reasonable factfinder could conclude beyond a reasonable doubt that Appellant distributed child pornography to IB's mother.

### ii. Distribution on Snapchat

Appellant argues the Government's only evidence that he made sexually explicit images of IB accessible on IB's Snapchat account was the testimony of IB and a text message exchange where IB asks Appellant for the password to her Snapchat account. We find the evidence legally sufficient. The testimony of a single witness may be sufficient to establish guilt beyond a reasonable doubt so long as the trier of fact finds the witness's testimony sufficiently cred-

ible. *United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006) (citations omitted). IB testified that Appellant put images of her genitalia on her Snapchat account so they were viewable by other users. IB testified these images were among those she identified as being of herself, which were included in an admitted prosecution exhibit of images found on Appellant's phone. IB testified that she learned what Appellant had done when other individuals contacted her about the images, confirming that others had viewed the images. The text exchange in which she asked Appellant for the Snapchat password tended to corroborate IB's testimony. Other evidence also supported IB's testimony by tending to show Appellant's opportunity and motive to commit the offense, including the images recovered from Appellant's phone and the video he made of himself reviewing IB's Snapchat account. A reasonable factfinder could conclude IB's testimony was sufficiently credible to find Appellant distributed child pornography on IB's Snapchat account.

Appellant additionally contends the evidence of distribution through Snapchat is insufficient because "the Government failed to identify any specific person who saw the images on Snapchat." Appellant cites *United States v. Gorski*, 71 M.J. 729, 733–37 (A. Ct. Crim. App. 2012) (en banc), for the proposition that merely making child pornography available on a network, without evidence that another person downloaded the file, is insufficient to prove distribution. In *Gorski*, our sister court set aside the appellant's conviction for distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (2006) and Article 134, UCMJ, because the Government failed to prove another person actually downloaded files of child pornography the appellant made available on a peer-to-peer file-sharing program. *Id.* However, the instant case is distinguishable from *Gorski* in that the Government provided evidence, through IB's testimony, that other individuals did see the child pornography Appellant made accessible in IB's Snapchat account.

Moreover, we agree with the Government that the prosecution is not required to prove the specific identity of the other individuals who received the child pornography in order to prove distribution. We find Appellant's case is more analogous to *United States v. Kuemmerle*, 67 M.J. 141, 144 (C.A.A.F. 2009), than to *Gorski*. In *Kuemmerle*, the appellant "posted a sexually explicit image of a child to his Yahoo! profile." *Kuemmerle*, 67 M.J. at 142. The CAAF found two acts constituted the appellant's distribution of child pornography: "(1) the posting of the image, whereby the image left the possession of the original user, and (2) delivery of the image, whereby another user accessed and viewed the image." *Id.* at 144. Similarly, in Appellant's case the Government introduced sufficient evidence through IB's testimony, and related circumstantial evidence, that a rational factfinder could find beyond a reasonable doubt that Appellant posted and delivered sexually explicit images of IB via Snapchat to others who accessed and viewed the images. *See also United States v.*

*Williams*, 74 M.J. 572, 577–78 (A.F. Ct. Crim. App. 2014) (following *Kuemmerle* and distinguishing *Gorski* where a law enforcement agent downloaded files of child pornography the appellant made available).

### d. Conclusion with Regard to Legal and Factual Sufficiency of the Child Pornography Offenses

Drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's convictions for knowing and wrongful possession, distribution, and production of child pornography beyond a reasonable doubt. Additionally, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## B. Factual Sufficiency of Assault Consummated by a Battery

### 1. Law

The test for factual sufficiency is whether, taking into account that we did not personally observe the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. We review issues of factual sufficiency de novo. *Washington*, 57 M.J. at 399 (citation omitted).

Appellant's conviction for assault consummated by battery in violation of Article 128, UCMJ, required the Government to prove: (1) on or about 2 December 2017, at or near Kaiserslautern, Germany, Appellant did bodily harm to IB by striking IB's shoulder with his hand and grabbing IB with his hand; and (2) the bodily harm was done with unlawful force or violence. *MCM*, pt. IV, ¶ 54.b.(2).

### 2. Analysis

Appellant contends his conviction for assault consummated by battery against IB is factually insufficient because it relies on the testimony of IB, whose "credibility is highly suspect." Appellant asserts IB had a strong motive to fabricate allegations against Appellant, and notes the court members found Appellant not guilty of several other offenses that relied on IB's testimony. We are not persuaded.

Again, the testimony of a single witness may be sufficient to prove an offense beyond a reasonable doubt. *Rodriguez-Rivera*, 63 M.J. at 383. IB testified that Appellant struck her on the shoulder and grabbed her during the 2 December 2017 incident in Appellant's car in Kaiserslautern. The court members personally observed IB testify and found her credible with respect to these specific assaults. We do as well.

Evidence recovered from Appellant's phone tended to corroborate IB's account. Investigators recovered the false message Appellant sent IB that Appellant had been in a serious vehicle accident, in order to trick IB to meet with him on 2 December 2017. In addition, investigators recovered photos Appellant evidently took of himself after the incident which showed marks on Appellant's face, consistent with IB's testimony that she threw her phone at his face, and what appears to be a bite mark on his arm, consistent with IB's testimony that she bit him as he held her and tried to keep her from leaving the vehicle. The Government also introduced, without objection, a portion of a text conversation in which IB told KL that IB had bit Appellant's arm and hit Appellant in the face with her phone. In response, KL confirmed that Appellant had told KL that IB had bitten him.

We find nothing implausible or inconsistent about IB's testimony that Appellant struck her shoulder or held her inside the car. IB's acknowledgement of her own violence against Appellant, albeit partially in self-defense, aids her credibility. We are untroubled by the court members' mixed findings regarding the alleged offenses IB testified to, which suggest careful examination of the evidence in light of the demanding burden that the Government prove guilt beyond reasonable doubt, rather than a general lack of faith in IB's truthfulness.

Accordingly, having weighed the evidence and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of assault consummated by battery against IB beyond a reasonable doubt.

## C. Ineffective Assistance of Counsel – Appellant's Cell Phone

### 1. Additional Background

On 1 February 2018, AFOSI agents interviewed KL regarding *inter alia* her knowledge of images of child pornography on Appellant's phone. The agents then obtained a search authorization for Appellant's phone and seized the phone from him. Subsequent forensic analysis disclosed the presence of sexually explicit images of IB created when she was under the age of 18 years, as described above, as well as other digital evidence which—together with IB's testimony—formed the core of the Government's proof of the offenses for which Appellant was convicted.

Appellant has submitted a sworn declaration dated 17 March 2021 in support of his contention that his trial defense counsel provided ineffective assistance by failing to move to suppress the evidence derived from the seizure of his phone. Appellant asserts that on or about 1 February 2018, he was in his first sergeant's office when AFOSI agents unexpectedly entered the room. The agents informed him they had a search authorization for his phone, and in-

structed him to unlock it and permanently disable the security. Although Appellant had previously used a fingerprint to lock his phone, his declaration asserted that as of 1 February 2018 he had switched the locking mechanism to a passcode. Appellant asked the agents if he had to permanently disable the passcode, and they told him he did and had no choice. Appellant asserts he was not advised of his rights at any point in the process.

This court received sworn declarations from Appellant's three trial defense counsel, Major (Maj) BM, Maj CN, and Captain (Capt) FR, responsive to Appellant's claims of ineffective assistance, which we have considered in relation to these issues.[9] *See United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020) (noting the CAAF has allowed the Courts of Criminal Appeals to accept affidavits to supplement the record "when necessary for resolving claims of ineffective assistance of trial defense counsel"). We address the contents of these declarations in our analysis below.[10]

**2. Law**

The Sixth Amendment[11] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (citation omitted). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if defense

---

[9] In addition to the decision not to move to suppress the evidence from Appellant's phone, the trial defense counsel declarations address the failure to object to certain testimony by a prosecution expert witness, discussed *infra*.

[10] We have considered whether a post-trial proceeding is required to resolve conflicts between Appellant's declaration and those of trial defense counsel, and we are convinced such a proceeding is not required. *See* 10 U.S.C. § 866(f)(3); *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). We find the declarations do not contain material factual disputes, and accepting Appellant's account as true he is nevertheless not entitled to relief.

[11] U.S. CONST. amend. VI.

counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result? *Id.* (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). With respect to prejudice, a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* (quoting *Strickland*, 466 U.S. at 694). "When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997) (citations omitted).

No person subject to the UCMJ "may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected . . . ." Article 31(b), UCMJ, 10 U.S.C. § 831(b).

### 3. Analysis

#### a. Appellant's Argument

Appellant contends he was denied the effective assistance of counsel because trial defense counsel failed to move to suppress the evidence the Government obtained from his phone. He asserts that a motion to suppress would likely have been successful in light of *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017). In *Mitchell*, an investigator advised the appellee of his rights and he invoked his right to counsel. The appellee was released, but approximately two hours later he was brought to his commander's office after the investigator obtained an oral search authorization. The investigator informed the appellee of the authorization and asked the appellee for his phone, which the appellee provided. However, when the investigator asked the appellee for the numeric passcode, he refused to provide it. The investigator then returned the phone to the appellee and asked him to permanently unlock it, stating that if the appellee refused, the Government would have a digital forensic expert unlock it. The appellee then permanently unlocked his phone as requested.

In *Mitchell*, the CAAF concluded that under the circumstances "the Government violated [the appellee's] Fifth Amendment[12] right to counsel as protected by *Miranda*[ *v. Arizona*, 384 U.S. 436 (1996)] and *Edwards*[ *v. Arizona*, 451 U.S. 477 (1981)]." 76 M.J. at 417. The CAAF found the appellee was in custody in his commander's office, and that the investigator's "line of questioning" including the request for the passcode and the request that the appellee unlock the phone was interrogation for Fifth Amendment purposes. *Id*. at 417–19. The CAAF explained that the investigator's initial express request for the passcode was "reasonably likely to elicit an incriminating response;" that the investigator's change of "tactics" to request the appellee himself unlock the phone "was part of the same basic effort" to obtain access to the contents of the phone; and that the appellee's act of unlocking the phone at the investigator's request was itself an incriminating response because it demonstrated the appellee's ownership and access to the phone. *Id*. at 418–19.

Appellant contends that a "fair reading of *Mitchell* is that the act of asking [Appellant] to input the passcode violate[d] his Article 31[, UCMJ,] rights." He asserts that the possible success of a motion to suppress was sufficient to undermine confidence in the outcome of the trial. Accordingly, he requests this court set aside the findings and sentence.

### b. Response by Trial Defense Counsel and the Government

In their declarations, trial defense counsel explained they were well aware of *Mitchell* and considered moving to suppress the evidence from Appellant's phone. Maj BM in particular asserted he specifically discussed with Appellant the possibility of such a motion. Trial defense counsel offered two primary explanations for not doing so.

First, trial defense counsel explained that after the investigation, they believed they lacked sufficient grounds for such a motion. Maj BM stated that when he discussed the issue with Appellant before trial, Appellant "at no point" relayed the information he provided in his 17 March 2021 declaration to this court. According to Maj BM, before trial, Appellant could not remember how he unlocked his phone for the agents. Although Appellant recalled that he had intended to change his phone security from a thumbprint to a passcode, he could not recall whether he had done so as of 1 February 2018. In addition, Appellant told Maj BM he had not invoked his right to counsel. Maj BM also interviewed both AFOSI agents involved in seizing Appellant's phone; they remembered that Appellant unlocked his phone for them, but did not remember what method he used to do so. Similarly, Maj CN's declaration stated her conversations with Appellant indicated "he did not have a memory of numerous

---

[12] U.S. CONST. amend. V.

things, to include how his phone was seized." She also interviewed the AFOSI agents, who told her Appellant unlocked his phone, they did not know by what method he did so, and they never asked him for his passcode.

Second, trial defense counsel explained they were aware of other sources of evidence supporting the child pornography allegations. There was child pornography on IB's own phone. Both IB and KL had viewed child pornography Appellant possessed. In addition, there was evidence Appellant had used the phone of a friend, Staff Sergeant NA (who testified as a prosecution witness), to access images of child pornography from IB's Snapchat account and send them to himself. Furthermore, Appellant had sent sexually explicit images of IB to IB's mother.[13] Thus, according to trial defense counsel, even a successful motion to suppress would not have dealt a decisive blow to the prosecution case as the Government could have developed these alternative sources of proof.

Drawing upon trial defense counsel's declarations, the Government asserts Appellant has failed to demonstrate deficient performance for three reasons. First, it asserts Appellant's inability to remember *before trial* the circumstances surrounding the seizure of his phone deprived the Defense of a factual basis to bring a motion to suppress. Second, it contends trial defense counsel sufficiently investigated the possibility of such a motion by interviewing Appellant and the AFOSI agents about the circumstances of the seizure. Third, the Government argues trial defense counsel made a strategic decision not to file the motion because they recognized doing so could have harmed the Defense overall by causing the Government to focus on additional sources of evidence. In addition, the Government argues Appellant cannot demonstrate prejudice because even if the motion had been filed and the military judge found a violation of Appellant's rights, the doctrines of inevitable discovery and independent source would have enabled the Prosecution to introduce the evidence from Appellant's phone in any event. *See generally United States v. Eppes*, 77 M.J. 339, 347–48 (C.A.A.F. 2018) (explaining the inevitable discovery and independent source doctrines).

### c. Conclusion Regarding Decision not to Move to Suppress

In light of the "strong presumption" that trial defense counsel acted "within the wide range of reasonable professional assistance," we find Appellant has failed to carry his burden to demonstrate deficient performance. *Datavs*, 71

---

[13] In a related vein, the Government did not call IB's mother as a witness, and Maj BM asserts one of the Defense's concerns "was that a successful motion to suppress may have resulted in the [G]overnment focusing on producing [IB's mother] for their case." Maj BM explains this would have been damaging to the Defense because IB's mother could corroborate some of the other allegations, including obstruction of justice, destruction of property, and assault and battery.

M.J. at 424 (quoting *Strickland*, 466 U.S. at 689). Several considerations lead us to this conclusion.

Trial defense counsel have attested Appellant told them he had little memory of the circumstances of the AFOSI's seizure of his phone. One aspect he did remember was that unlike *Mitchell*, he did not invoke his right to counsel. Appellant's 18 March 2021 declaration to this court, created more than a year after his trial, included more detail, including that he was not advised of his rights; yet significantly, Appellant did not assert he provided this information to his trial defense counsel before his court-martial. Trial defense counsel also interviewed the agents involved, but they provided relatively little additional relevant detail. This left the Defense with a very limited factual basis upon which to bring a suppression motion.

Trial defense counsel were aware of *Mitchell*, but several potentially significant factual circumstances in that case were not present in Appellant's case. One notable distinction was that, unlike *Mitchell*, Appellant had not invoked his right to counsel. Another was that, unlike *Mitchell*, the AFOSI agents had not expressly asked Appellant to disclose his phone's passcode to them, such that the request to unlock his phone "was part of [a] same basic effort" initiated by an incriminating question. *Mitchell*, 76 M.J. at 418. Appellant could not tell his counsel if he used a passcode at all, as opposed to a fingerprint.

We appreciate the argument that, despite the fact that Appellant did not invoke his right to counsel, a reasonable interpretation of *Mitchell* is that Article 31, UCMJ, should require a rights advisement before law enforcement agents make the request that a suspect unlock his cell phone. However, that is hardly established law. Appellant directs us to no such precedent from the CAAF or the Courts of Criminal Appeals. To be clear, the point is not that such an argument would have failed in Appellant's case. We reach no such conclusion. The matter was not litigated, and we do not know what the evidence would have been.

Instead, the relevant question is whether trial defense counsel's decision not to file a motion to suppress was, under the "highly deferential" *Strickland* standard, within the broad boundaries of reasonable performance. *Mazza*, 67 M.J. at 474. We do not doubt that other reasonably competent trial defense counsel might have decided to bring such a motion. However, in light of the very limited factual basis available to the Defense, the dissimilarities between the situation in Appellant's case and the precedent of *Mitchell*, the apparent availability to the Government of other sources of evidence, and strategic or tactical concerns with pushing the Government to develop those additional sources, we are not persuaded trial defense counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot

be relied on as having produced a just result." *Id*. (quoting *Strickland*, 466 U.S. at 686).

**D. Testimony by Expert Witness**

**1. Additional Background**

At trial, the Government called KP, a digital forensics consultant who performed an analysis of Appellant's phone as part of the AFOSI investigation. The military judge recognized KP as an expert in "digital forensics." During his initial testimony KP laid the foundation for several prosecution exhibits consisting of evidence recovered from Appellant's phone, including sexually explicit video and images of IB.

The Government's next witness after KP was IB. IB's testimony included her account of the 2 December 2017 incident in Appellant's car, during which Appellant struck IB's shoulder and held her to prevent her from exiting the vehicle. IB testified that during the incident she bit Appellant's arm and later threw her phone at Appellant's face.

After IB testified, the Government recalled KP in order to introduce additional digital evidence. During KP's recall testimony, the following colloquy occurred between the circuit trial counsel (CTC) and KP:

> Q. [CTC] During the course of your forensic examination were you able to recover images of the accused's face and arm relevant to the same time period as the --
>
> A. [KP] Yes, sir. [T]here were multiple images that depicted [Appellant]'s face, with some markings on his face as well as close-up pictures of his forearm, showing injury to his arms.
>
> Q. And you are [sic] in the room for the testimony of [IB]?
>
> A. Yes, sir.
>
> Q. And were the images that you recovered from the picture on his phone consistent with her testimony of biting his arm during the time he was grabbing her?
>
> A. It does appear the arm photos do show bruising that is consistent with biting. And the facial picture does show injury to the face, consistent with the cell phone being thrown.

The CTC then handed KP Prosecution Exhibit 18, which consisted of three images: one of Appellant's face with a mark on his nose near his left eye; one showing what appears to be a circular bruise on a forearm; and another showing a darker circular bruise on a forearm. KP identified Prosecution Exhibit 18 as "an exhibit I created with a picture showing [Appellant]'s face, with an abrasion across his nose. The second one is a picture of his forearm, as well as a

third picture, showing two distinct circles that appear to be bite marks." **[R. 416-17]**

Trial defense counsel did not object to any of KP's testimony quoted above. The CTC then offered Prosecution Exhibit 18, which the military judge admitted without objection.

### 2. Law

Where an appellant fails to object to testimony but asserts error on appeal, we review for plain error. *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). Under plain error review, the appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted). In order to demonstrate material prejudice from improper testimony, "the appellant 'must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Lopez*, 76 M.J. at 154 (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)).

Mil. R. Evid. 702 governs the testimony of expert witnesses in a trial by court-martial. The rule provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," among other criteria, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is the product of reliable principles and methods." "[A]n expert witness may not offer opinions that 'exceed[ ] the scope of the witness's expertise.'" *United States v. Flesher*, 73 M.J. 303, 315 (C.A.A.F. 2014) (second alteration in original) (quoting *United States v. Birdsall*, 47 M.J. 404, 410 (C.A.A.F. 1998)).

Mil. R. Evid. 701 provides that a witness not testifying as an expert may offer testimony in the form of an opinion that is "rationally based on the witness' perception," "helpful to clearly understanding the witness' testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Mil. R. Evid. 702."

We review allegations of ineffective assistance de novo. *Gooch*, 69 M.J. at 362 (citation omitted). The burden is on the appellant to demonstrate both deficient performance and prejudice. *Datavs*, 71 M.J. at 424 (citation omitted).

### 3. Analysis

Appellant asserts KP's testimony that the injuries depicted in Prosecution Exhibit 18 were consistent with IB's testimony was "wildly outside the scope of [KP]'s expertise." Appellant contends the military judge's failure to interrupt the testimony and provide corrective instructions to the court members was

plain and obvious error. Appellant further argues that in light of the weakness of the evidence of his assault and battery of IB, but for KP bestowing an "expert imprimatur" to IB's testimony, there is a reasonable probability he would have been acquitted of that charge and specification. In the alternative, Appellant contends his trial defense counsel were ineffective for failing to object to KP's testimony.

As an initial matter, we agree with Appellant to the extent that KP's testimony that the images in Prosecution Exhibit 18 appeared consistent with IB's testimony was—depending on the purpose for which it was introduced—likely objectionable. We agree that KP's testimony that the physical injuries depicted in the exhibit appeared consistent with IB's testimony was an opinion outside the scope of his qualifications as an expert in digital forensics. Like non-expert witnesses, expert witnesses may also provide lay opinion testimony outside the scope of their expertise, but only to the extent such opinions are relevant, "helpful to clearly understanding the witness' testimony or to determining a fact in issue," and the probative value of such testimony is not substantially outweighed by countervailing dangers such as unfair prejudice, confusion of the issues, or misleading the members. Mil. R. Evid. 401, 403, 701. In this instance, KP's opinion that the images were consistent with IB's testimony was arguably irrelevant and unhelpful because the court members heard the testimony and could review the images to make such a determination for themselves. The Government suggests that KP's opinion was relevant and admissible to explain why KP created Prosecution Exhibit 18 and included those particular images; however, any probative value of such an explanation when the members already heard IB's testimony and will receive the exhibit is vanishingly small.

Nevertheless, a military judge does not commit plain error every time he declines to intervene *sua sponte* where a party does not raise a potentially meritorious objection to witness testimony. Responsibility for litigating the case rests with counsel, who may have tactical or strategic reasons for not objecting to objectionable testimony. For example, opposing counsel may prefer not to draw attention to the matter, or may consider the objectionable testimony harmless. The military judge does have a *sua sponte* duty to ensure the accused receives a fair trial. *United States v. Voorhees*, 79 M.J. 5, 14 (C.A.A.F. 2019). However, in this case, KP's rather obvious opinion that the images depicting circular bruises on Appellant's forearm and a mark on his nose were consistent with IB's testimony that she bit his arm and hit him in the face with her phone in no way deprived Appellant of a fair trial. We find the military judge did not clearly or obviously err by not addressing KP's opinion testimony regarding Prosecution Exhibit 18 in the absence of an objection.

Furthermore, assuming solely for purposes of analysis that the military judge did clearly err, Appellant fails to demonstrate prejudice. Appellant does

not contend Prosecution Exhibit 18 was erroneously admitted. KP's testimony merely stated what was apparent to the members from hearing IB's testimony and reviewing the exhibit. Even without KP's opinion testimony, the inference that Prosecution Exhibit 18 tended to corroborate a portion of IB's testimony regarding the 2 December 2017 incident was obvious and available for trial counsel to argue and the court members to consider. We note the CTC did not even refer to KP's opinion during argument. Accordingly, we perceive no reasonable probability of a more favorable result for Appellant had the asserted error either been corrected or not occurred at all, and therefore no material prejudice to Appellant's substantial rights.

We find Appellant's claim of ineffective assistance of counsel similarly unavailing. In the responsive declarations trial defense counsel provided to this court, they explain they did not object for two reasons. First, trial defense counsel wanted to avoid drawing additional attention to IB's testimony and the pictures. Second, based on personal observation, trial defense counsel described KP's demeanor during this particular testimony as "uncertain," and they decided his "vague" testimony was not worthy of objection. Given the relative insignificance of the testimony, we conclude this was not deficient performance measurably below the standard expected of fallible defense counsel. *See Gooch*, 69 M.J. at 362 (citation omitted). Furthermore, for the reasons stated above, a successful objection would not have created a reasonable probability of a more favorable result. *See id*. (citation omitted). Accordingly, Appellant has failed to demonstrate either deficient performance or prejudice.

## E. Trial Counsel's Sentencing Argument

### 1. Law

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *Voorhees*, 79 M.J. at 9 (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). Under plain error review, the appellant bears the burden to demonstrate error that is clear or obvious and results in material prejudice to his substantial rights. *Knapp*, 73 M.J. at 36 (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005)). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard,

[for example], a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Andrews*, 77 M.J. at 402 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). "[T]rial counsel may 'argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). "A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted).

Relief for improper argument will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Fletcher*, 62 M.J. at 178 (quoting *Meek*, 44 M.J. at 5). "[I]n the context of an allegedly improper sentencing argument, we consider whether 'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" *Halpin*, 71 M.J. at 480 (second alteration in original) (quoting *Erickson*, 65 M.J. at 224). In assessing prejudice from improper sentencing argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the sentence. *See id.* (citing *Fletcher*, 62 M.J. at 184).

### 2. Additional Background and Analysis

Appellant asserts the CTC's sentencing argument was improper in multiple respects. Although the Defense did not object to these portions of the Government's sentencing argument, Appellant contends this court should set aside his sentence for plain error. We address Appellant's arguments in turn.

#### a. CTC Assertion that Appellant "Lied" to the Members

During presentencing proceedings, Appellant's oral unsworn statement included the following regarding the child pornography offenses:

> I looked up the age of consent in Germany and under the UCMJ and found out that [IB] was over the age to have sex. My thought process was if she is able to give consent, then how would you get in trouble fulfilling it if she is my girlfriend at the time. Ignorance of the law is no excuse and I take full responsibility for recording her when she was not 18.

In rebuttal, the Government recalled KP, its expert in digital forensics who had examined Appellant's phone. KP testified that he found evidence Appellant did search for the age of consent in Germany; however, this search occurred on 4 December 2017, after Appellant had obtained sexually explicit images of IB and created video of her engaging in sexual acts. Trial defense counsel did not cross-examine KP on his rebuttal testimony.

The CTC's sentencing argument included the following:

> Consider this, [Appellant] recorded a minor on 20 August 2017. He grabbed photos of her, possessed images of a minor in November. In December he assaults her and sends images to her mom out of control and then, as you just heard today, then he searched to figure out what the age of consent was for a minor in Germany. And yet he got up here in front of you and he gave an excuse, another excuse.
>
> He said well I thought it was okay to record her in August because I searched for the age of consent in Germany so that's why I thought this was okay. How is that possible when he didn't do that until 4 months later? How's that possible? This -- the [D]efense asked at the beginning of this process [during voir dire] would you all agree this is the most important day of his life and he lied to you, to you, to this tribunal in this hearing.

Appellant contends the basis for the CTC to allege Appellant lied was "flimsy," and that the military judge plainly and obviously erred by permitting this "patently inflammatory remark" without corrective instructions to put the CTC's argument "in context." We find no plain error. The Government may rebut factual assertions in an accused's unsworn statement, and trial counsel may argue reasonable inferences from the evidence. *Halpin*, 71 M.J. at 479. Even accepting KP's testimony as accurate, we acknowledge it is possible that the portion of Appellant's unsworn statement quoted above was not strictly untrue. As Appellant contends, it is possible Appellant searched for the age of consent in Germany by other means prior to the occasion KP identified on 4 December 2017; alternatively, Appellant did not specifically say that he researched the age of consent before he obtained sexually explicit images of IB. However, it is also a reasonable inference that Appellant researched the age of consent in Germany on 4 December 2017 because he did not already know that information. In addition, considering Appellant's statements and KP's testimony together, it is at least a reasonable inference that Appellant intended to mislead the court members regarding his "thought process," even if each assertion, read in isolation, was not demonstrably false. Trial defense counsel were free to attack these inferences through cross-examination of KP or in argument, but elected not to. Viewing the circumstances as a whole, we do not find the military judge plainly erred by not interrupting or addressing the CTC's argument *sua sponte*.

### b. CTC Comment Regarding Hash Value of Contraband Images

During the Government's presentencing case, trial counsel asked KP a series of questions related to the sexually explicit images of IB that Appellant

made viewable on IB's Snapchat account. KP explained that every digital image has a unique identifying number associated with it known as a "hash value," similar to a "digital fingerprint." Hash values allow investigators to identify duplicates of known images of child pornography. However, KP explained—over defense objection—that if a Snapchat user viewed a sexually explicit image of IB on her account and took a "screenshot" of it, the screenshot image would not have the same hash value as the original image.[14] KP testified such a screenshot would have an "individual hash value and would not be identifiable through standard means that law enforcement enforces to be able to find that particular image." On cross-examination, KP agreed that there was no evidence other Snapchat users had in fact taken screenshots of the images. However, on redirect examination KP agreed there was evidence that others in the community had seen the images, and that without those individuals' phones, there was no way to tell if they had taken screenshots.

The CTC referred to this testimony in his sentencing argument:

> The impact [of Appellant's offenses] to [IB] was substantial. It's substantial and significant. It's evidence[d] through her testimony, through [KP], who told you there's evidence that there are people in that community who have seen those Snapchat pictures. And he testified that there's no way to tell how widespread those images went because screenshotting that stuff changes the hash tag [sic] value of it. So, there's no way to tell how widespread within the Kaiserslautern community those have gone.

Appellant contends KP's testimony regarding different hash values was "irrelevant," and that the CTC's argument was "comparable to arguing facts not in evidence" in light of KP's testimony there was no evidence anyone actually created a screenshot of the images. Again, we find no plain error. KP did not testify that no such screenshots existed. Even in the absence of specific evidence of such screenshots, KP's testimony had some relevance as an aggravating circumstance by indicating Appellant's offense created the opportunity for proliferation of images of child pornography that were not susceptible to detection by the common law enforcement technique of comparing hash values. The CTC's argument was a fair comment on this evidence and the inferences to be drawn from it.

---

[14] Although not raised as a distinct assignment of error, Appellant contends the military judge abused his discretion by overruling the Defense's objection. We disagree and find this contention does not warrant additional discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

### c. CTC Reference to IB's Unsworn Statement

During presentencing proceedings, IB provided oral and written unsworn statements to the court members in which she described the impact of Appellant's offenses on her. Appellant contends it was plain and obvious error for the CTC to refer to the contents of IB's unsworn statements during argument "as if they were facts in evidence." However, in *United States v. Tyler*, the CAAF held that "either party may comment on properly admitted unsworn victim statements." 81 M.J. 108, 113 (C.A.A.F. 2021). Appellant does not allege IB's unsworn statements were improperly admitted, nor that the CTC misstated their contents. In light of *Tyler*, we find no plain error in the CTC's references to the unsworn statements.

### d. Remaining Contentions Regard to CTC Sentencing Argument

We find Appellant's remaining contentions, including that the CTC improperly argued that confinement would protect both the military community and "easy to convince minors," and improperly referred to Appellant's civilian convictions in Arizona for driving under the influence and attempting to flee law enforcement in December 2018, do not warrant specific analysis. We find these arguments were reasonable comments and inferences from the evidence, and the military judge did not plainly and obviously err by failing to interrupt or address them *sua sponte* in the absence of any objection.

In conclusion, we find Appellant is entitled to no relief for the alleged errors in the Government's sentencing argument, either individually or collectively.

## F. Convening Authority's Failure to Take Action

### 1. Additional Background

The offenses of which Appellant was convicted occurred between on or about 1 October 2016 and on or about 1 May 2018. The convening authority referred the charges and specifications on 14 June 2019 for trial by a general court-martial. The court-martial concluded on 10 January 2020, and the military judge signed the Statement of Trial Results on the same day.

On 16 January 2020, Appellant submitted a one-page memorandum to the convening authority regarding clemency. Appellant did not request relief with regard to the findings or sentence of the court-martial, but "simply . . . ask[ed] for a speedy post-trial processing" so that he could "move on with [his] life."

On 4 February 2020, the convening authority signed a decision on action memorandum. The convening authority stated he took "no action" on the findings or the sentence in Appellant's case. Ten days later, on 14 February 2020, the military judge signed the entry of judgment. Appellant did not object to the convening authority's decision on action or to any other aspect of the post-trial

process prior to submitting his assignments of error to this court. *See* R.C.M. 1104(b) (governing post-trial motions).

**2. Law**

> [I]n any court-martial where an accused is found guilty of at least one specification involving an offense that was committed before January 1, 2019, a convening authority errs if he fails to take one of the following post-trial actions: approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part.

*United States v. Brubaker-Escobar*, __ M.J. __, No. 20-0345, 2021 CAAF LEXIS 818, at *1 (C.A.A.F. 7 Sep. 2021) (per curiam); *see also* Article 60, UCMJ, 10 U.S.C. § 860 (2016 *MCM*). The convening authority's failure to explicitly take one of those actions is a "procedural error." *Id.* at *2, *7–8. "Pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018), procedural errors are 'test[ed] for material prejudice to a substantial right to determine whether relief is warranted.'" *Id.* at *8 (alteration in original) (quoting *United States v. Alexander*, 61 M.J. 266, 269 (C.A.A.F. 2005)).

**3. Analysis**

Appellant does not allege he was prejudiced by the convening authority's failure to take action on the sentence, but requests this court remand the case for corrective action to address "a fundamental misstep that does not require a prejudice analysis." *See, e.g., United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *79–90 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (Johnson, C.J., dissenting). However, after Appellant filed his assignments of error, the CAAF decided *Brubaker-Escobar*. In light of *Brubaker-Escobar*, the convening authority's failure to take action on the sentence was a non-jurisdictional procedural error to be tested for material prejudice. We find no such prejudice to Appellant's substantial rights in this case. The convening authority was not authorized to disapprove, commute, or suspend Appellant's adjudged bad-conduct discharge. *See* 10 U.S.C. § 860(c)(4). The convening authority did have power to disapprove, commute, or suspend Appellant's adjudged confinement in whole or in part, *see* 10 U.S.C. §§ 860(b)(2), (c)(4); however, Appellant requested no such relief. Considering the totality of the circumstances, including the sentence imposed, the absence of any request for clemency, the convening authority's limited ability to modify the sentence, and the nature and seriousness of the offenses of which Appellant was convicted, we find no material prejudice to Appellant's substantial rights by the convening authority's failure to take action on the sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

NATALIA A. ESCOBAR, Capt, USAF
Deputy Clerk of the Court